UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NADEZHDA TELETEN, | No. 2:14-cv-2140-EFB |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN COLVIN, Acting Commissioner of Social Security | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, plaintiff's motion is denied and the Commissioner's motion is granted.

I.     BACKGROUND

Plaintiff filed an application for SSI, alleging that she had been disabled since February 1, 2004.[1] Administrative Record ("AR") 171-179. Her application was denied initially and on reconsideration. *Id*. at 135-140, 144-148. On December 6, 2012, a hearing was held before

---

[1] Plaintiff subsequently amended her disability onset date to February 28, 2011. AR 52-53.

1

administrative law judge ("ALJ") Carol Eckersen. *Id*. at 49-72. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert ("VE") testified. *Id*.

On February 1, 2013, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act. *Id*. at 9-19. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since February 28, 2011, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, chronic cervicalgia, chronic lumbago, mild scoliosis of the thoracic spine, and mild osteoarthritis of the lumbar spine (20 CFR 416.920(c).

\* \* \*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

\* \* \*

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that she is able to push or pull occasionally with the right upper extremity. She is able to climb ladders, ramps or stairs occasionally and she is able to balance, stoop, kneel, crouch and crawl occasionally.

\* \* \*

5. The claimant is capable of performing past relevant work as a short order cook and fast food worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

\* \* \*

6. The claimant has not been under a disability, as defined in the Social Security Act, since February 28, 2011, the date the application was filed (20 CFR 416.920(f)).

*Id*. at 12-19.

Plaintiff's request for Appeals Council review was denied on July 17, 2014, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-4.

2

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff argues that the ALJ erred in (1) applying administrative res judicata to her case; (2) finding that her mental impairments were not severe; and (3) and rejecting her treating and examining physicians' opinions. ECF No. 15 at 8-14.

### A. Res Judicata

Plaintiff first contends that the ALJ erred in applying administrative res judicata to his case. ECF No. 15 at 3-4, 8-9. "The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir.1988). A prior finding that a claimant is not disabled creates a presumption of nondisability. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). A claimant can overcome this presumption by showing that there has been a

"change in circumstances," such as an increase in the severity of an impairment or a change in the claimant's age category. *Id*. The doctrine of res judicata is limited to claims that involve the same facts and same issues as a prior decision. 20 C.F.R. § 416.1457(c) (1); *see Lester*, 81 F.3d at 827 (holding that an ALJ is precluded from applying "res judicata where the claimant raises a new issue, such as the existence of an impairment not considered in the previous adjudication.").

As applied here, the ALJ noted that plaintiff had previously filed an application for SSI and that on December 20, 2010, a final decision was issued finding that plaintiff was not disabled as of that date. AR 9. The ALJ also concluded that "because there does not appear to be new and material evidence demonstrating that the claimant's circumstances have changed since the prior Administrative Law Judge decision, . . . the [plaintiff] does not have impairments to justify a residual functional capacity that is more restrictive than that found in the prior decision." *Id*. at 15. Plaintiff initially argued that the ALJ erred in this regard because the administrative record filed in this action does not include a final decision denying the prior application. ECF No. 15 at 3. Thus, plaintiff urged, without the prior decision the court cannot review whether the ALJ's reliance on res judicata was appropriate. *Id*. That problem was rendered moot when the Commissioner filed a supplemental administrative record that includes the prior decision. AR 456-470. Plaintiff was given leave to file a supplemental brief addressing the prior decision. ECF Nos. 20, 21.

Plaintiff contends in her supplemental brief that the supplemental record still fails to show that the ALJ did in fact review the prior decision before applying res judicata. ECF No. 21. She premises this argument on the fact that the ALJ's decision does not list the prior decision as an exhibit. *Id*.; *see* AR 20-23.[2] The argument lacks merit. The ALJ's decision states that there was no change in plaintiff's impairments and determined that plaintiff had the same severe impairments and RFC as provided in the prior decision. *Id*. at 12-13, 15, 461-462. As conceded by plaintiff, the assessed severe impairments and RFC determinations from the two decisions

---

[2] In her reply brief, plaintiff again argues that it is "unclear whether the ALJ saw the prior decision," but then states that she "does not want this case reversed and remanded because this ALJ may not have seen the findings, rationale, and evidence for the decision; plaintiff wants reversal for payment of benefits." ECF No. 25 at 1.

1    match. ECF No. 25 at 1. Not only did the ALJ consider the prior decision, but she explicitly
2    compared her findings to the findings made in the prior decision.

3          The prior decision is now included in the administrative record and the court is able to
4    review whether the ALJ's application of res judicata was reasonable. Although plaintiff contends
5    that it was not, her arguments are not persuasive. She argues that the evidence establishes
6    changed circumstances in that she now has severe mental impairments and physical limitations.
7    ECF No. 25 at 2. She relies on medical opinions provided by her treating psychiatrist and an
8    examining physician. But as discussed below, the ALJ found that the new limitations assessed by
9    these physicians were not supported by the record, and therefore these medical opinions were not
10   fully credited. Given that plaintiff had failed to show any additional limitations, the ALJ properly
11   concluded that there was no change in circumstances and that res judicata was applicable to
12   plaintiff's current application.

13         Furthermore, regardless of the ALJ's reference to the principle of administrative res
14   judicata, the ALJ did not actually rely on that principle alone in assessing plaintiff's claim. A fair
15   reading of the decision reveals that apart from noting that res judicata would apply, the ALJ
16   independently considered and weighed the evidence, including evidence that existed at the time
17   of plaintiff's prior application. For example, the prior determination relied upon a March 2009
18   orthopedic evaluation performed by Dr. Matthew Johnson. AR 464. Here, without reference to
19   the prior decision, the ALJ discussed Dr. Johnson's findings and opinion and explained the basis
20   for giving the assessment great weight. *Id*. at 16. The same treatment was provided for all
21   relevant evidence in the record, without deference to the previous decision's findings. Thus, the
22   court finds that the ALJ's determination was based on her own independent review of the
23   evidence and that any invocation of res judicata was, at the most, harmless.

24         B.    <u>Any Error at Step-Two Was Harmless</u>

25         Plaintiff argues that the ALJ erred in failing to find her mental impairments severe at step-
26   two of the sequential evaluation process. ECF No. 15 at 9. Specifically, plaintiff contends that
27   the ALJ's erred in assessing the severity of her mental impairments because the ALJ failed to
28   properly apply the psychiatric review technique set forth in 20 C.F.R. § 416.920a. *Id*. at 9-10.

5

1       "The step-two inquiry is a de minimis screening device to dispose of groundless claims."

2 *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996).  The purpose is to identify claimants whose

3 medical impairment is so slight that it unlikely they would be disabled even if age, education, and

4 experience were not taken into account.  *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).  At step

5 two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are

6 "severe" within the meaning of 20 C.F.R. § 416.920(c).  A severe impairment is one that

7 "significantly limits" a claimant's "physical or mental ability to do basis work activities."  20

8 C.F.R. § 416.920(c).  "An impairment is not severe if it is merely 'a slight abnormality (or

9 combination of slight abnormalities) that has no more than a minimal effect on the ability to do

10 basic work activities.'"  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

11       When a claimant alleges disability due to a mental impairment, the Commissioner's

12 regulations require the ALJ to follow a special psychiatric review technique in reviewing the

13 claim.  20 C.F.R. § 404.1520a.  The ALJ must first determine whether a medically determinable

14 mental impairment exists (20 C.F.R. § 404.1520a(b)), and then rate the degree of functional

15 limitation in four broad areas (activities of daily living; social functioning; concentration,

16 persistence, or pace; and episodes of decompensation) (20 C.F.R. § 404.1520a(c)).  These steps

17 are documented in a Psychiatric Review Technique Form ("PRTF"), and the ALJ's "written

18 decision must incorporate the pertinent findings and conclusions based on the technique" and

19 "must include a specific finding as to the degree of limitation in each of the functional areas."  20

20 C.F.R. § 404.1520a(e).  Thus, "the regulations contemplate that written decisions at the ALJ and

21 Appeals Council levels should contain a narrative rationale, instead of the checklist of . . .

22 conclusions found in a PRTF."  *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir.

23 2011) (quotation marks omitted).

24       At step-two the ALJ concluded that plaintiff had no more than mild restrictions in

25 activities of daily living; social functioning; and concentration, persistence, or pace; with no

26 episodes of decompensation.  AR 12.  The ALJ's step-two discussion, however, did not address

27 or identify any particular evidence supporting these findings, but instead indicated that the basis

28 for the findings "will be discussed below."  *Id*.  Plaintiff contends that under 20 C.F.R.

1  § 416.920a the ALJ was required to provide his findings at the second step, and failure to do so
2  constitutes reversible error.

3  The court need not decide whether the ALJ erred at step-two by failing to comply with the
4  requirements of 20 C.F.R. § 416.920a.  In determining plaintiff's RFC, the ALJ consider
5  plaintiff's mental impairments and addressed all relevant evidence.  AR 16-18.  Reversing the
6  non-severe determination as to those conditions would simply require that they be considered in
7  determining plaintiff's RFC, and they were.  Accordingly, any error in evaluating plaintiff's
8  mental impairments at step-two was, at most, harmless.  *See Lewis v. Astrue*, 498 F.3d 909, 911
9  (9th Cir. 2007) (finding harmless an ALJ's failure to list certain impairment at step two where the
10 ALJ fully evaluated the impairment at step four); *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d
11 1050, 1055 (9th Cir. 2006); *Smolen*, 80 F.3d at 1290 (if one severe impairment exists, all
12 medically determinable impairments must be considered in the remaining steps of the sequential
13 analysis) (citing 20 C.F.R. § 404.1523); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)
14 (ALJ's failure to find claimant's obesity severe at step two was harmless error where it was
15 considered in determining claimant's RFC).

16    C.   The ALJ Properly Weighed the Medical Opinion Evidence

17 Plaintiff next argues that the ALJ erred by failing to give legally sufficient reasons for
18 rejecting opinions from treating physician Dr. Zhalkovsky and examining physician Dr. Defreitas.
19 ECF No. 22 at 10-15.

20 The weight given to medical opinions depends in part on whether they are proffered by
21 treating, examining, or non-examining professionals.  *Lester*, 81 F.3d at 834.  Ordinarily, more
22 weight is given to the opinion of a treating professional, who has a greater opportunity to know
23 and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.
24 1996).  To evaluate whether an ALJ properly rejected a medical opinion, in addition to
25 considering its source, the court considers whether (1) contradictory opinions are in the record;
26 and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a
27 treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81
28 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining medical professional

may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id*. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

        1.     Dr. Zhalkovsky

Plaintiff's treating psychiatrist, Dr. Boris Zhalkovsky, treated plaintiff from October 2011 through December 2012. AR 451-455. Dr. Zhalkovsky diagnosed plaintiff with major depression, moderate, recurrent, with psychotic features/paranoia. *Id*. at 423. In February 2012, he opined that plaintiff was unemployable due to her very serious mental illness. *Id*. at 424. In December 2012, he completed medical source statement containing an opinion regarding plaintiff's mental limitations. It was his opinion that plaintiff had a poor ability to understand and remember detailed and complex instructions; fair ability to understand and remember very short and simple instructions; poor ability to carry out instructions; and poor ability to attend and concentrate. He further opined that plaintiff had a fair ability to interact with supervisors and work without supervision; poor ability to interact with the public and coworkers; and poor ability to adapt to changes in the workplace. *Id*. at 445-446.

In July 2011, plaintiff underwent a comprehensive psychiatric evaluation, which was performed by Alysia Liddell, Ph.D. *Id*. at 383-387. Dr. Liddell diagnosed plaintiff with adjustment disorder with depressed mood and post-traumatic stress disorder. *Id*. at 386. She opined that plaintiff had a good ability to understand, remember and carry out short and simple instructions; maintain attention and concentration; accept instructions from supervisors and respond appropriately; sustain an ordinary routine without special supervision; interact with coworkers; and deal with various changes in the works setting. *Id*. at 387.

/////

In determining that plaintiff's mental impairments would not impact plaintiff's ability to work, the ALJ gave substantial weight to Dr. Liddell's opinion, while giving little weight to Dr. Zhalkovsky's opinion. *Id.* at 16-18. As Dr. Zhalkovsky's opinion was contradicted by Dr. Liddell's opinion, the ALJ could not reject Dr. Zhalkovsky's opinion absent specific and legitimate reasons. *See Orn v. Astrue*, 495 F.3d at 632.

As for Dr. Zhalkovsky's February 2012 opinion that plaintiff was unemployable due to her mental illness, the ALJ observed that such an opinion was reserved for the Commissioner. AR 17. "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) *see also* 20 C.F.R. § 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Accordingly, the Commissioner was not required to accept Dr. Zhalkovsky's opinion that plaintiff was disabled.

The ALJ also gave reduced weight to Dr. Zhalkovsky's opinion due to his short treating relationship with the plaintiff. The ALJ observed that Dr. Zhalkovsky had only seen plaintiff on five occasions, "indicating that his treatment history was not extensive." AR 17; *see id.* at 451-455 (treatment notes reflecting five visits over the course of approximately one year). The limited treating relationship was a proper consideration in giving reduced weight to Dr. Zhalkovsky's opinion. *See* 20 C.F.R. § 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give the to the source's medical opinion.").

The ALJ also found Dr. Zhalkovsky's conclusions were internally inconsistent, as well as inconsistent with the record as a whole. AR 17. An ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that contradictions between a treating physician's opinion and clinical notes are a proper basis for rejecting a treating physician's opinion). As an example, the ALJ observed that there were inconsistencies between statements Dr. Zhalkovsky

9

provided in his February 2012 letter and his treatment notes. *Id*. In the letter, Dr. Zhalkovsky specifically stated that "[s]ince the day of my first meeting with [plaintiff] I did not see any improvements in her psychiatric condition" and that he did not expect to see improvements over the next 12 months. *Id*. at 424. However, treatment notes from the prior month show that "[s]ome ('. . . very mild . . .') improvement was reported" despite continued complaints of depression and anxiety. *Id*. at 453. That treatment note also reflected that plaintiff continued to make paranoid statements and reported problems with other people, but that the severity of those problems had diminished. *Id*. The ALJ reasonably relied on this inconsistency in giving reduced weight to plaintiff's treating physician.

The ALJ also observed that Dr. Zhalkovsky's assessed limitations were inconsistent with treatment notes from October 2011, which reflect that plaintiff did not complain about being hopeless or helpless; she denied panic attacks; and her insight, judgment, and motivation for treatment "all looked O.K." AR 17; *see id*. at 455. Plaintiff argues, however, that the ALJ mischaracterizes this treatment record, which also noted that plaintiff was "not very pleasant but cooperative," "eye contact was significantly decreased; speech was decreased in tone and flow and not pressured; attention span and concentration were decreased; the patient appeared to be in [] mild – moderate psychiatric distress; her self-esteem was decreased, mood was moderately depressed, affect was moderately anxious fearful about future, suspicious and very tearful . . . . The patient appeared to be paranoid-talked about problems with other people, neighbors in the apartment complex." ECF No. 15 at 12; *see* AR 455.

The ALJ's description of the treatment note emphasizes findings that suggest that plaintiff's impairments are not severe, while giving less attention to other findings. Ironically, in making this argument plaintiff conveniently omits from her discussion Dr. Zhalkovsky's findings that plaintiff was alert and her "cognition was normal – [she] was able and willing to participate in a coherent conversation and was fully oriented times three –to self, time and place;" there were no problems with dressing, nourishing and grooming; no "symptoms of acute mania, the thought process was goal-directed and coherent; [and] thought content was unremarkable for audio, visual, command or any other types of hallucinations." AR 455. These additional findings,

which plaintiff ignores, support the ALJ's conclusion that Dr. Zhalkovsky's opinion was inconsistent with his treatment notes.

While plaintiff may disagree with the ALJ's interpretation of the evidence, the ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities," *Edlund*, 253 F.3d at 1156, and "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld," *Thomas*, 278 F.3d at 954.  While the treatment records contain some findings that support plaintiff's position, the court cannot find that the ALJ's interpretation of the evidence is unreasonable.  Accordingly, the inconsistency between Dr. Zhalkovsky's treatment note and the severe limitations he assessed was a sufficient basis for rejecting his opinion.

Accordingly, the ALJ gave legally sufficient reasons for rejecting Dr. Zhalkovsky's opinion.  Moreover, the ALJ's finding that plaintiff did not have severe mental impairments was supported by Dr. Liddell's opinion.  As Dr. Liddell's opinion was based on her independent evaluation of plaintiff, her opinion constitutes substantial evidence supporting the ALJ's RFC determination.  *Andrews*, 53 F.3d at 1041.

### 2. Dr. Defreitas

Plaintiff also argues that the ALJ erred in rejecting the opinion from Dr. Defreitas.  ECF No. 15 at 13-14.

In June 2011, plaintiff completed a comprehensive internal evaluation with Dr. Donna Defreitas, an examining physician.  *Id*. at 375-380.  Plaintiff reported to Dr. Defreitas that she experienced spine pain, bilateral leg pain with swelling that precluded her from standing more than a few hours, and bilateral numbness.  *Id*. at 375-376.  Dr. Defreitas diagnosed lumbargo with signs of likely disk herniation, questionable carpal tunnel syndrome, and leg pain.  *Id*. at 379.  It was her opinion that plaintiff could stand and walk for up to four hours, sit for six hours, and lift and carry 20 pounds occasionally and 10 pounds frequently.  *Id*.  Dr. Defreitas also opined that plaintiff could frequently climb, balance, kneel and crawl; occasionally crouch; frequently reach and handle; and occasionally finger and feel.  *Id*. at 380.

/////

In relation to her previous application, plaintiff underwent a complete orthopedic evaluation with Dr. Matthew Johnson, an examining physician. *Id*. at 307-313. Dr. Johnson noted that plaintiff had exaggerated pain responses and exhibited positive Waddell signs (indicating malingering) including over reaction to pain, regionalization, exaggeration, and nonanatomic pain. *Id*. at 312. He concluded that plaintiff's complaints were mainly subjective, with minimal objective findings. *Id*. Dr. Johnson opined that plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand and walk 6 hours in an eight-hour workday, sit 6 hours in an eight-hour workday; occasionally push and pull with her upper extremities; and occasionally climb, stoop, kneel, and crouch. *Id*. at 312. Dr. Johnson also found that plaintiff had decreased vision in her left eye, which could inhibit some activities. *Id*.

In assessing plaintiff's RFC, the ALJ gave some weight to Dr. Defreitas's opinion, while giving great weight to Dr. Johnson's opinion. *Id*. 14. The ALJ gave reduced weight to Dr. Defreitas's opinion because it was "not entirely consistent with her findings on examination as well as with other substantial evidence." *Id*. As previously noted, an ALJ may reject a physician's opinion that is inconsistent with other medical evidence, including the physician's own findings. *Tommasetti*, 533 F.3d at 1041.

The ALJ noted that although Dr. Defreitas observed muscle spasm and weakness with positive straight leg testing, her examination revealed no diminished range of motion and plaintiff's radicular symptoms went only to her buttocks. *Id*. at 14, 378. Dr. Defreitas also diagnosed questionable carpal tunnel syndrome and found that plaintiff could only occasionally engage in fingering and feeling and only lift 10 pounds occasionally. *Id*. at 375, 379. However, as noted by the ALJ, plaintiff had negative Tinel and Phalen testing. *Id*. at 15, 379. Given the limited clinical findings, the ALJ reasonably concluded that the limitations assessed by Dr. Defreitas were not fully supported by her own objective findings. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (where the evidence supports more than one rational interpretation, the court shall defer to the ALJ).

The ALJ also noted that Dr. Defreitas's opinion was not supported by the mild to moderate findings on radiological and MRI studies. AR 15. A March 2010 X-ray of plaintiff's

thoracic spine revealed only very mild scoliosis and degenerative osteoarthritic changes. *Id*. at 417. Plaintiff's lumbar spine also included only mild findings. A 2006 MRI showed degenerative disease with mild to moderate C6 root sleeve impressions. *Id*. at 419. As concluded by the ALJ, these limited findings are contrary to and undermine Dr. Defreitas's opinion.

Accordingly, the ALJ provided legally sufficient reasons for rejecting Dr. Defreitas's opinion. Moreover, the ALJ's finding that plaintiff maintained the ability to perform medium work is supported by Dr. Johnson's examining opinion, which was accorded great weight. As Dr. Johnson's opinion was based on his own independent evaluation of plaintiff, that opinion constitutes substantial evidence supporting the ALJ's RFC determination. *See Tonapetyan*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that an examining physician's opinion constitutes substantial evidence because it relies on independent examination of the claimant).

IV. CONCLUSION

The ALJ applied the proper legal standard and her decision is supported by substantial evidence. Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 31, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE